JACOB LEMON v. THE CHICAGO & GRAND TRUNK RAILWAY COMPANY.

*Negligence—Burden of proof—Evidence.*

1. Plaintiff's sheep entered upon defendant's track, by reason of some person opening and leaving open the gate to the field in which the sheep were pasturing, adjoining said track, and were run over and killed by defendant's cars.

    *Held,* that in order to a recovery plaintiff must prove that the gate was opened, or left open, through the negligence or carelessness of the defendant or its servants.

2. Where a fact inquired after is entirely problematical and the question called for a conclusion of the witness, upon facts which were not the subject of expert testimony, and concerning which it was the province of the jury, and not the witness to draw all proper and necessary inferences,

    *Held,* that the overruling of an objection to such a question on the grounds above stated, was error.

Error to Kalamazoo.  (Mills, J.)   Argued January 21 and 22, 1886.   Decided February 10, 1886.

Case.  The defendant brings error.  Reversed.  The facts are stated in the opinion.

*Edwards & Stuart* and *E. W. Meddaugh*, for appellant.

*Howard & Roos*, for plaintiff.

[Briefs of counsel are mainly devoted to a discussion of the rights of the plaintiff under a covenant in his deed and the liability of defendant and the covenantor thereunder. REPORTER.]

CHAMPLIN, J.   This action of trespass on the case was brought to recover damages alleged to have been occasioned through the defendant's neglect of duty, by which certain of plaintiff's sheep were run over by defendant's engine and cars and killed and injured.   The declaration avers:

(1) The right of way of defendant's railway was conveyed by plaintiff to the Peninsular Railway Company.

(2)  As a part of the purchase price it paid, the Peninsular Railway Company, by itself, its grantees and assigns, agreed to make a cattle-pass, and to erect and maintain cattle-guards on each side of said cattle-pass.

(3)  Said Peninsular Railway Company, in substantial compliance with its said agreement, did build and maintain said cattle-pass and cattle-guards.

(4)  Thereupon, by reason of the premises, it was the duty of said defendant, as grantee and assignee of said Peninsular Railway Company, to keep up in good repair and maintain said cattle-pass and cattle-guards.

(5)  That defendant disregarded its said duty, and on or about the first day of September, 1883, entirely removed said cattle-guards from and away from said cattle-pass.

(6)  By reason of the removal of said cattle-guards aforesaid the sheep of the said plaintiff strayed upon defendant's railroad track, and were run over and killed by defendant's engine and cars.

(7)  Said railroad on either side was fenced, and a gate on either side opened upon said cattle-pass, which prevented plaintiff's sheep from entering upon said cattle-pass, and by

reason of defendant having carelessly and negligently left open said gates, and removed said cattle-guards, said sheep, without fault of plaintiff, strayed upon said railroad track and were killed by defendant's engines and cars.

The main point in controversy discussed upon the argument is whether the convenant contained in the deed between the plaintiff and the Peninsular Railway Company relative to the construction of a cattle-pass and cattle-guards, runs with the land and is binding on the defendant. The deed, which was duly acknowledged and recorded, reads as follows:

"This indenture, made the eighth

{ U. S. Rev. Stamp. } day of September, A. D. 1870, be-
{ 50c. J. L. H. L. } tween Jacob Lemon and Hannah,
{ September 8, 1870. } his wife, of Brady, in the county

of Kalamazoo and State of Michigan, of the first part, and the Peninsular Railway Company, of the second part, witnesseth, that the said parties of the first part, for and in consideration of the sum of one dollar to them in hand paid by the said party of the second part, the receipt whereof is hereby confessed and acknowledged, do by these presents grant, bargain, sell, remise, release, and forever quitclaim unto the said party of the second part, its successors and assigns forever, a strip of land one hundred feet wide along the line of its railroad, now located or hereafter to be located ; that is to say, fifty feet on the northerly side and fifty feet on the southerly side of the said line, over and across the following described property, viz.: the northeast quarter of section number five (5), in township number (4) south, of range number ten (10) west, in the State of Michigan.

The said party of the second part is to make a cattle-pass on said premises at such place as the party of the first part may designate, with cattle-guards on each side, and also to make a sluice under the road, so as to let the water pass under, reserving the timber thereon : provided, however, that the lands hereby granted shall be used for the purpose of constructing thereon and maintaining and operating a railroad, and the appurtenances thereto.

To have and to hold the said strip of land one hundred feet wide across the said lands to the said party of the second part, and to its successors and assigns, to the sole and only proper use, benefit, and behoof of the said party of the second part, and its successors and assigns forever. In wit-

ness whereof the said parties of the first part have hereunto set their hands and seals the day and year first above written.

"In presence of

| "M. S. Brackett, | Jacob Lemon | [L. S.] |
| "Nelson Lemon." | Hannah Lemon. | [L. S.] |

It appeared in evidence that at the time this deed was executed the residence and barn of plaintiff were upon the north side of the line of the road as contemplated, and upon the southerly side was a pasture which adjoined a lake where the stock of plaintiff was watered.; that when the road was built plaintiff indicated to the Peninsular Railway Company where he wished the cattle-pass constructed, and it constructed one there, and built cattle-guards substantially as covenanted in the deed. The plaintiff then constructed a lane connecting with the cattle-pass, so that his stock had free access to the water of the lake. It was conceded that the defendant was and is the successor of the Peninsular Railway Company, and succeeded to its franchises and property. It appears in the record that soon after the defendant became possessed of the right of way named in the deed it took up the cattle-guards and filled in the pits with earth. It also constructed legal fences along its right of way, and placed gates at the crossing where the cattle-pass had been, which at the time of the alleged injury were in good repair. The sheep were discovered killed and injured on the morning of the eighth of September, 1883, by defendant's trackmen. The carcasses were found some thirty or forty rods westerly from the crossing, and the gate on the side in which the sheep were pastured open. It was shown that on the day before it was observed by the trackmen, and was closed and apparently all right.

Upon these facts the defendant claims

1. That the covenant in the deed is a personal one between the parties to the deed, and does not run with the land, and also that the defendant is under no duty or obligation to keep and maintain a cattle-pass and cattle-guard.

2. If the covenant does run with the land, and the defendants were thereby obliged to keep and maintain the cattle-

guard, the remedy of plaintiff is upon the covenant for a breach thereof.

3. That under the declaration the plaintiff cannot recover upon proof that defendant negligently failed to maintain its cattle-guards, without proof that the sheep of plaintiff passed through the gate which was the approach to the cattle-pass, which was left open through the negligence of defendant.

The provision in the deed provided for an easement in the land conveyed, permanent in its character, for the benefit of the grantor of the adjoining land, and created a burden upon the land conveyed, and the defendant took the title burdened with the easement.   By accepting the agreement there is no doubt that the Peninsular Railway Company undertook to comply and by implication promised to perform the agreement ; and the declaration alleges that it did in fact substantially comply therewith.   We do not feel called upon, nor do we think it proper, to determine in this action whether the Peninsular Railway Company, or its successors or assignees, were obliged to maintain the cattle-guards and pass, under the terms of this deed, nor what remedy the plaintiff has against defendant for taking up and destroying the cattle-guards.

It does not appear to us that there is any such direct connection between the act of taking up the cattle-guards and the injury to the sheep from thirty to forty rods westerly from where the cattle-guards were as makes it reasonable or probable that the act complained of was the cause of the injury.   The Peninsular Railway Company had never fenced the southeasterly side of the track towards the lake, and had never constructed fences from the cattle-guards to the fence on the opposite side.   There was a fill for the railroad track at that point of about two feet, and the Peninsular Railway Company had filled in with gravel and plank, so as to make a crossing, and this the plaintiff avers was a substantial compliance with the requirements of the deed.

The exact time when the defendant fenced the road and built the gates and took up the cattle-guards does not appear.   The plaintiff says he cannot tell the year, but that

it was soon after defendant became the owner of the road. The inference from the testimony is that it had been done a considerable length of time before the accident to plaintiff's sheep.

Plaintiff's counsel was permitted to ask the plaintiff, when testifying in his own behalf, this question, against defendant's objection :

" Now, Mr. Lemon, you may state to the jury whether if those cattle-guards had been there on the track, cattle-passes fixed, whether those sheep would have got down to where they were killed."

This was clearly improper. The fact inquired after was entirely problematical, and the question called for a conclusion of the witness upon facts which were not the subject of expert testimony, and concerning which it was the province of the jury and not the witness to draw all proper and necessary inferences.

The testimony shows that under the facts as they existed at the time of the injury complained of such injury resulted from the act of some person opening, and leaving open, the gate to the pasture in which the sheep were, thus permitting them to enter upon defendant's right of way, where they were run over, and either killed or injured. If, therefore, the gate was opened, or left open, through the negligence or carelessness of the defendant, or its servants, it would be liable for any injury resulting therefrom ; but if the gate was opened and so left by any other party than defendant or its servants, either through negligence or design, the defendant would not be liable in this action. Whether the cattle-guards remained as originally constructed or not, it is clear that the injury resulted through the carelessness or design of some party in opening the gate, and would not have occurred had it not been opened, irrespective of whether the cattle-guards had been removed or not.

. The defendant was entitled to its first request to charge, which was as follows :

" The plaintiff's declaration, in substance, alleges it was the duty of defendant to maintain a cattle-pass across its

right of way, protected on each side by cattle-guards; the approach to which pass from plaintiff's lot, where he pastured his sheep, was on either side, through a gate erected and maintained by defendant. Under the declaration the plaintiff cannot recover, upon proof that defendant negligently failed to maintain its cattle-guards to said cattle-pass, without proof that the sheep of plaintiff passed through the gate which was the approach to said cattle-pass, left open through the negligence of the defendant."

The court refused this request, which refusal is assigned by the defendant as error.

The judgment must be reversed, and a new trial granted.

The other Justices concurred.