DE GRAW *v.* EMORY.

TRIAL—WITNESSES—CROSS-EXAMINATION OF PARTIES.
One of two plaintiffs in replevin may be cross-examined as to his own understanding, and his co-plaintiff's admissions, concerning a material fact in the case.

Error to Grand Traverse; Corbett, J. Submitted June 17, 1897. Decided July 13, 1897.

Replevin by George Archie De Graw and another against John U. Emory. From a judgment for defendant on verdict directed by the court, plaintiffs bring error. Affirmed.

*Turner & Gates*, for appellants.

*Patchin & Loranger*, for appellee.

HOOKER, J. On May 4, 1892, L. K. Cleveland sold a portable sawmill to the plaintiffs for $1,500, for which he received five notes, of $300 each, conditioned that the title to said mill and machinery should not pass until these notes should be fully paid. He also took a chattel mortgage upon the property, in which, by mistake, his wife, Lottie A. Cleveland, was named as mortgagee. On May 4, 1894, there being then nearly $600 of the purchase price due and unpaid, with interest from the date of sale, Cleveland took possession of the property; and on September 22d it was sold upon notice of foreclosure, Mr. Cleveland bidding it in for $550. From that time until January 1, 1896, Mr. Cleveland had possession of the property, when he traded a portion of it to Frank Beardsley, and at the same time gave him the chattel mortgage and notes, informing him that $550 should be indorsed. Subsequently Mary E. Emory bought a portion of the prop-

erty, and later her husband, the defendant, bought a portion of the property from Beardsley. Emory took all of the property so purchased by himself and wife to Old Mission, where he used it for sawmill purposes until the' plaintiffs replevied it in this action. In January, 1896, the plaintiffs purchased from Beardsley, for $50, the outstanding notes, which, with the sum of $25 paid Cleveland, is all that they paid upon the purchase price of the mill, so far as we have been able to ascertain from the record. The court directed a verdict for the defendant, and, from an examination of the testimony, we think he was warranted in doing so.

Several assignments of error relate to rulings upon the introduction of testimony, but they require no discussion, as there is no legal question of importance involved. One of them will be noticed, as counsel seem to specially desire it. One of the plaintiffs admitted upon cross-examination that a part of the property had been removed before Mr. Cleveland took the mill into his possession. His testimony indicated that he had the articles in his own possession at one time, though at the time of the trial he said that he did not know where they were, and had not seen them for some time.

"Q. But they were taken away from there?

"A. I was told so; yes, sir.

"Q. Who told you? (Objection; incompetent. Objection overruled. Exception.)

"A. My brother told me he had them."

Again, the following occurred:

"Q. As a matter of fact, you had given up possession of that mill after the sale, had you not?

"A. No, sir.

"Q. You hadn't?

"A. No, sir.

"Q. Then explain to the jury how you came to take that machinery away from there.

"A. Because we saw a notice that it was going to be sold. I didn't want to lose everything.

113 Mich.—43.

"*Q.* Then you considered you had lost the mill, did you, after that sale?

"*A.* We considered we were liable to lose it. (Question repeated.)

"*A.* No, sir.

"*Q.* What did you consider?

"*A.* We considered we would have to try it and see.

"*Mr. Turner:* We object to what he considered; immaterial.

"*Court:* Well, he has answered it. I will not rule it out.

"*Mr. Turner:* We don't care to have it ruled out.

"*Q.* When did you first consider you had any interest in the mill after this sale under the chattel mortgage?

"*Mr. Turner:* We object as immaterial what he considered.

"*Court:* You may answer.

"*Mr. Turner:* Note an exception.

"*A.* Why, I never considered that I hadn't any interest in it."

Counsel say in relation to this ruling:

"It was clearly inadmissible to allow witness, against the objection and exception of plaintiffs' counsel, to testify what somebody told him, and also what he considered. We do not know of any rule of law that will allow a witness, against objection, to testify about what he considered in his own mind, as *no one could possibly refute such speculation by competent testimony.* This was certainly error, and would not be allowed in any court. We would like to have the court, if this is not error, show us the difference between the court's allowing witness to testify as to what he considered and what he thought, contained in the above assignments of error, and the case of *Lemon* v. *Railway Co.,* 59 Mich. 623. Plaintiff's counsel was permitted to ask the plaintiff this question: '*Q.* Now, Mr. Lemon, you may state to the jury whether, if those cattle-guards had been there on the track,—cattle passes fixed,—whether those sheep would have got down to where they were killed.' The court held in that case that the question was clearly improper, the fact inquired after was entirely *problematical,* and the question called for a conclusion of the witness upon facts concerning which it was the province of the jury, and not the witness, to draw all proper and necessary inferences."

The distinction is to us obvious, and it is the difference between allowing the plaintiff, upon questions by his own attorney, to answer a problematical question, and, to an extent, be the judge of fact in his own case, which the jury alone should be, and permitting opposing counsel to draw from a party his own understanding, and his brother's and co-plaintiff's admissions, concerning a fact in the case.

The judgment is affirmed.

The other Justices concurred.